AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>Rick Taylor<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>) | Case No.  13-8053-JMH |

FILED by _____ D.C.

JAN 3 1 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   October 11, 2012   in the county of   Palm Beach   in the   Southern   District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (C) | Possession of with Intent to Distribute Controlled Substances |
| 18 U.S.C. § § 922(g)(1) | Felon in Possession of a firearm |

This criminal complaint is based on these facts:







☑ Continued on the attached sheet.

_____
*Complainant's Signature*

FBI S/A Andrew Pudimott
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   01/31/2013

_____
*Judge's signature*

City and state:   West Palm Beach, FL      Hon. James M. Hopkins, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Andrew Pudimott, being duly sworn, states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over three years. I am currently assigned to FBI's Safe Streets Task Force. As part of my duties, I have gained experience investigating violations of federal law.

2. This affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of an arrest warrant for Rick Taylor. The information contained in this affidavit is based on my own personal knowledge as well as information provided to me by other law enforcement officers. Because this affidavit is being for the limited purpose of establishing probable cause, it does not contain each and every detail about this investigation of which I am aware.

3. On October 11, 2012, a West Palm Beach Police Department Confidential Informant ("CI") placed a controlled call to Rick Taylor and made arrangements to buy $50 worth of "crack" cocaine from him (Rick Taylor).

4. During this time, West Palm Beach Police Department Agent Malcolm Allison, who had previously established visual surveillance on the known residence of Rick Taylor, observed Rick Taylor exit the residence located at 1249 10th Street in West Palm Beach and enter a white Dodge pickup. Rick Taylor drove away from the residence and began to travel towards the agreed transaction location. Agent Allison, who was operating an unmarked police vehicle, followed Rick Taylor and provided his location to other law enforcement personnel participating in the investigation.

5. Officers Scott Lally and Chris Brett initiated a traffic stop on Rick Taylor, whom they knew to have a suspended driver's license. It should be noted that the vehicle being operated by Rick Taylor had an unassigned license plate. Rick Taylor was placed under arrest at that time and transported to the West Palm Beach Police Department for processing. Officer Maroto responded to the scene of the traffic stop with his certified narcotics dog "Ike. " Officer Maroto walked "Ike" around the exterior of the white Dodge pickup. During this time, "Ike" gave alerts indicating the presence of narcotics inside the vehicle. As this was occurring, members of the West Palm Beach Police Department were executing a State search warrant on the residence located at 1249 10th Street in West Palm Beach, Florida.

6. At the time of the execution of the search warrant, Agents discovered no one was inside the residence at that time. During the execution of the search warrant, agents discovered a total of four (4) firearms as well as what agents recognized based on their law enforcement training and experience to be crack cocaine and powder cocaine. Most of the cocaine was located inside of a dresser in the southwest bedroom. The suspected powder cocaine and "crack" cocaine were field tested by Agent Scott Bales; both yielded a positive reaction for the presence of cocaine. Agents also discovered scales and U.S. currency.

7. Two firearms were discovered inside the southwest bedroom of the residence. One firearm was identified as a Kel Tec P-11, 9 mm luger. The other firearm, identified as a Smith and Wesson .40 caliber firearm, was located inside of a safe. The safe also contained Rick Taylor's social security card and a vehicle title. The vehicle title belonged to the white Dodge pickup that Rick Taylor was operating when stopped by the

West Palm Beach Police Department that same day. Two other firearms were discovered inside the northwest bedroom of the residence. One firearm was identified as a Taurus, .38 Special revolver, and the other firearm was identified as Kel Tec P-32.

8.  Agents Greg Rideau and Scott Bales conducted a post-arrest interview of Rick Taylor, which was audio and video recorded. Prior to any questioning, Rick Taylor was advised of his rights under *Miranda* by Agent Bales. Agent Bales utilized the standard West Palm Beach Police Department *Miranda* card for that purpose. Rick Taylor acknowledged that he understood his rights; signed the *Miranda* warnings card; and agreed to speak with the agents. Rick Taylor said he was driving from his girlfriend's residence on "10th Street" at the time of the traffic stop. He admitted to having some "crack" cocaine on him at the time of the traffic stop. He also admitted to having been to "prison" in the past. Rick Taylor said he had some clothes inside her residence and he comes and goes from that residence. Rick Taylor said his girlfriend gave one key to him and the other key to her mother.

9.  The Agents questioned Rick Taylor about what was discovered inside the residence. Rick Taylor initially said there was no "dope" inside the residence, but then admitted that "anything" found in the house belonged to him. Rick Taylor said the gun in the safe belonged to him which he described as a "45." When told drugs were also found inside the same bedroom, Rick Taylor said the drugs belonged to him and that they were kept in a white case inside of a drawer. When he was told there was a firearm inside the same top drawer as the gun, Rick Taylor said the gun belonged to him. He described it as a "40" and had it for protection.

10. When questioned about the other two guns found in the residence, Rick Taylor said he did not know about those guns. Rick Taylor expressed a desire to cooperate with law enforcement. During subsequent telephone conversations with Agent Bales, Rick Taylor admitted that one of the other guns found inside the residence belonged to him, but that he had given that gun to his girlfriend's brother.

11. The recovered Smith and Wesson .40 caliber firearm was inspected by ATF Special Agent Robert Shirley, a firearms nexus expert. Special Agent Shirley determined the Smith and Wesson .40 caliber firearm was manufactured outside the State of Florida and that the Smith and Wesson is a "firearm" as defined in Title 18, United States Code, Section 921(a)(3).

12. A records check revealed that Rick Taylor was previously convicted of felony offenses. Your affiant subsequently received certified judgments of conviction regarding Rick Taylor, which included:

- \* April 2005 conviction for Possession of Cocaine with Intent to Sell in Case No. 04-14276; and
- \* May 2007 conviction for Possession of Cocaine with Intent in Case No. 06CF016010.

13. A fingerprint comparison was conducted using the prints taken of Rick Taylor following his arrest on October 11, 2012, and comparing those with the prints appearing of the felony judgments listed in paragraph 10. The fingerprint examiner concluded that the fingerprints on all of the documents were made by the same person.

14. Based on the foregoing, your affiant submits that there is probable cause to believe that Rick Taylor unlawfully possessed a firearm as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) and possessed one or more controlled

4

substances, to wit, cocaine and cocaine base, commonly known as "crack" cocaine, with the intent to distribute them, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(C).

FURTHER AFFIANT SAYETH NAUGHT

FBI Special Agent Andrew Pudimott

Sworn to and subscribed before me this 31 day of January, 2013, in West Palm Beach, Florida.

HONORABLE JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

5